

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.

Ranjit Kaur Ghotra,
    a.k.a. Nancy,

    Defendant.

_____/

Case: 4:22-cr-20113
Judge: Davis, Stephanie Dawkins
MJ: Ivy, Curtis
Filed: 03-02-2022
SEALED MATTER (tt)

Violations:
18 U.S.C. § 1343
7 U.S.C. § 2024(b)
42 U.S.C. § 1760(g)

## INDICTMENT

F I L E D
MAR 0 2 2022
U.S. DISTRICT COURT
FLINT, MICHIGAN

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

### *The Federal Food Stamp Program*

1.    The federal Food Stamp Program is a program designed to raise the level of nutrition of low-income households. The Food Stamp Program is funded by the U.S. Department of Agriculture (USDA) and largely administered in Michigan by the USDA's Food and Nutrition Service (FNS) and the Michigan Department of Health and Human Services (MDHHS) (formerly called the Michigan Department of Human Services and the Michigan Family Independence Agency). The Food Stamp Program is governed by federal statutes and regulations. In 2008, the Food Stamp Program was renamed the Supplemental Nutrition

1

Assistance Program, or SNAP. Nevertheless, for purposes of clarity, the program will be referred to in this Indictment as the Food Stamp Program.

2.     Both low-income households and retail food stores must meet certain eligibility criteria before they can participate in the Food Stamp Program.

3.     Eligible recipients of food stamp benefits may use those benefits solely for the purchase of eligible food items, which include any food or food products intended for consumption at home.

4.     Eligible retail food stores may accept food stamp benefits only as payment for eligible food items. Such stores may not accept food stamp benefits in exchange for ineligible items such as alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption. Nor may such stores accept food stamp benefits in exchange for cash. Nor may such stores accept food stamp benefits to pay down lines of credit or pay off loans.

5.     To participate in the Food Stamp Program in Michigan, a store owner is required to complete, sign, and submit to the USDA's FNS an FSP Application for Stores (Form FNS-252). The application contains a certification, signed by the store owner, that states that violations of the Food Stamp Program regulations can lead to criminal prosecution and sets forth as examples of such violations, "Trading cash for food stamp benefits," "Accepting food stamp benefits as payment for ineligible items," and "Accepting food stamp benefits as payment on credit

2

accounts or loans." Earlier versions of Form FNS-252 contained the same warnings in slightly different language.

### *The Federal WIC Program*

6.      The Special Supplemental Nutrition Program for Women, Infants, and Children, referred to as the WIC program, provides federal grants to States for supplemental foods, health care referrals, and nutrition education for low-income pregnant, breastfeeding, and non-breastfeeding postpartum women, and to infants and children up to age five who are found to be at nutritional risk. In Michigan, the WIC program is principally administered by the USDA's FNS and the MDHHS. The WIC program is governed by federal statutes and regulations.

7.      Both low-income households and retail food stores must meet certain eligibility criteria before they can participate in the WIC program.

8.      Eligible recipients of WIC benefits may use those benefits solely for the purchase of eligible food items, which include such items as milk, breakfast cereal, cheese, eggs, fruits, and vegetables.

9.      Eligible retail food stores may accept WIC benefits only as payment for eligible food items. Such stores may not accept WIC benefits in exchange for ineligible items such as alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption. Nor may such stores accept WIC

benefits in exchange for cash. Nor may such stores accept WIC benefits to pay down lines of credit or pay off loans.

10.    To participate in the WIC Program in Michigan, a store owner is required to complete, sign, and submit to the MDHHS (previously, to the Michigan Department of Community Health) a WIC Vendor Application (Form DCH-0576) and then complete and sign a WIC Vendor Contract and Certification (Form DCH-0199), in which the vendor agrees to, among other things, "[n]ever give WIC client's cash in exchange for redeeming their food benefits," "[n]ever allow the sale of non-food items, alcohol, alcoholic beverages or tobacco products in exchange for food instruments," "[n]ever buy or sell food instruments for cash," and "[n]ever provide credit . . . for WIC authorized foods not obtained at the time of the transactions." The WIC Vendor Contract and Certification also contains a penalty provision stating that one who fraudulently obtains WIC funds is subject to criminal fines and imprisonment. Early versions of Form DCH-0199 contained the same warnings in slightly different language.

### *The Issuance, Use, and Redemption of Food Stamp and WIC Benefits*

11.    The MDHHS provides eligible food stamp beneficiaries with Electronic Benefit Transfer (EBT) cards, commonly referred to in Michigan as "Bridge" cards because the Mackinac Bridge is depicted on the face of the card. The MDHHS also provides food stamp beneficiaries with personal identification

numbers (PINs), which are to be used with the EBT cards. Likewise, the MDHHS provides eligible WIC beneficiaries with EBT (Bridge) cards and PINs.

12.     The MDHHS issues a specific monthly dollar amount of food stamp benefits to food stamp beneficiaries, and also issues a specific monthly dollar amount of WIC benefits to WIC beneficiaries. These food stamp and WIC benefits are stored in a central computer database and are electronically accessed through the use of EBT cards and PINs.

13.     Retail food stores obtain electronic terminals, known as point-of-sale (POS) terminals through third-party processors.

14.     The purchase of eligible food items with food stamp benefits is accomplished in the following manner: (a) the food stamp beneficiary selects eligible food items at a retail food store authorized to accept food stamps; (b) he or she goes to the checkout lane; his or her EBT card is swiped through the POS terminal, which reads the magnetic strip on the back of the EBT card; he or she enters his or her PIN into the POS terminal; (c) the POS terminal communicates electronically with a central computer database located outside of the State of Michigan; (d) the central computer database then electronically informs the POS terminal that the purchase is either approved or disapproved based on the current balance of food stamp benefits in the beneficiary's account; (e) if the purchase is approved, the beneficiary leaves the store with his or her groceries, and the central

computer database deducts the purchase price from his or her food stamp account; and (f) after further processing, the U.S. Treasury credits the amount of food stamp purchases at the retail food store by wire to the designated bank account of the retail food store.

15.     The purchase of eligible food items with WIC benefits is accomplished in the same way that eligible food items are purchased with food stamp benefits, as described in steps (a) – (e) above. Then, after further processing, the Michigan Department of Treasury releases payments for the amount of WIC purchases at the retail food store, which are credited by wire to the designated bank account of the retail food store.

### *Cheers Market*

16.     Cheers Market, also known as American Spirit, LLC, was a convenience store located at 2809 W. Court Street in Flint, Michigan that carried grocery items and other merchandise.

17.     In May 2010, Cheers Market was authorized by the USDA's FNS to accept food stamp benefits from its customers, and in June 2014, it was authorized by the Michigan Department of Community Health to accept WIC benefits from its customers.

18.     Cheers Market possessed and used a POS terminal to process the purchases of eligible food items with food stamp and WIC EBT cards. Cheers

6

Market also possessed and used a second POS terminal through which it processed transactions using food stamp EBT cards.

19. At all times relevant to this Indictment, defendant Ranjit Ghotra and her spouse were full-time employees at Cheers Market and operated Cheers Market.

20. At all times relevant to this Indictment, Cheers Market maintained an account at Team One Credit Union. Federal funds representing food stamp and WIC benefits redeemed at Cheers Market were regularly transferred by wire from the U.S. Treasury to a Cheers Market account at Fifth Third Bank or Team One Credit Union. Defendant Ranjit Ghotra's spouse was an authorized signer for the Cheers Market accounts at Fifth Third Bank and at Team One Credit Union. Defendant Ranjit Ghotra's spouse also owns the property on which Cheers Market is located.

## COUNTS ONE - FIVE
### 18 U.S.C. § 1343 - Wire Fraud

21. The allegations in paragraphs 1 through 20 are incorporated into this count by reference.

22. Between on or about March 2017 and on or about December 2020, in the Eastern District of Michigan, defendant Ranjit Ghotra devised and intended to devise a scheme to defraud the WIC program, the SNAP program, the state of Michigan, and the United States, and to obtain money by means of materially false

and fraudulent pretenses, representations, and promises. In furtherance of the

scheme, defendant knowingly transmitted and caused the WIC program, the SNAP

program, the state of Michigan, and the United States to transfer writings, signs,

signals, and funds by wire communications in interstate commerce.

23.     It was part of the scheme that defendant intentionally submitted, and

caused to be submitted, electronic communications with the WIC and SNAP

programs via EBT Bridge Card transactions, which indicated that the store had

sold eligible food items to a beneficiary with WIC benefits or SNAP benefits,

respectively, even though defendant had not sold such eligible food items to the

beneficiary in the amount claimed.

24.     It was also part of the scheme that defendant Ranjit Ghotra would

accept and redeem food stamp benefits and WIC benefits from Cheers Market

customers and in exchange (1) give them cash, at a discounted rate, and/or (2) give

them items that may not be purchased with food stamp or WIC benefits, with a

total value less than the amount of redeemed food stamp or WIC benefits.

25.     It was also part of the scheme that defendant Ranjit Ghotra would

swipe the food stamp and WIC EBT cards of the store's customers through a POS

terminal at Cheers Market, and that the corresponding PINs would be entered into

the POS terminals as if the customers were purchasing eligible food items when in

fact, as defendant Ranjit Ghotra then and there well knew, the customers were

providing their food stamp and/or WIC benefits (1) in exchange for cash, and/or (2) in exchange for items that may not be purchased with food stamp or WIC benefits. The POS terminals would then communicate by wire with a central computer database located outside of the state of Michigan, which would approve the purchases/transactions.

26.     It was also part of the scheme that federal funds representing food stamp and WIC benefits accepted and redeemed at Cheers Market would be transferred by wire, directly and through intermediaries, from the U.S. Treasury and from the State of Michigan Department of Treasury to an account of Cheers Market at Team One Credit Union.

27.     It was also part of the scheme that Cheers Market and defendant Ranjit Ghotra would financially benefit from the scheme.

28.     Defendant Ranjit Ghotra knew that these practices were contrary to and violated federal law.

29.     On or about each of the dates set forth below, in the Eastern District of Michigan, defendant Ranjit Ghotra, for the purpose of executing the scheme and artifice described above, transmitted or caused WIC or SNAP, as indicated below, to transmit, by means of wire communications in interstate commerce writings, signs, and signals for the transactions described below, each transaction or set of transactions constituting a separate count:

9

| COUNT | DATE | DESCRIPTION | WIC or SNAP |
|:---:|---|---|---|
| 1 | November 12, 2020 | $47.23 transaction | WIC |
| 2 | November 13, 2020 | $58.78 transaction | WIC |
| 3 | November 18, 2020 | $26.03 transaction | SNAP |
| | | $31.80 transaction | SNAP |
| | | $40.00 transaction | SNAP |
| 4 | November 19, 2020 | $30.00 transaction | SNAP |
| | | $60.00 transaction | SNAP |
| 5 | November 19, 2020 | $40.00 transaction | SNAP |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SIX
### 7 U.S.C. § 2024(b) - Food Stamp Fraud

30.     From on or about March 2017, through on or about December 2020, in the Eastern District of Michigan, defendant, Ranjit Ghotra, knowingly acquired and used food stamp benefits having a value of over $5,000 in a manner contrary to federal law.

All in violation of Title 7, United States Code, Section 2024(b).

10

## COUNT SEVEN
## 42 U.S.C. § 1760(g) - WIC Fraud

31.     From on or about March 2017, through on or about December 2020,

in the Eastern District of Michigan, defendant, Ranjit Ghotra, willfully obtained by

fraud WIC benefits having a value of over $100 and retained such funds for

personal use and gain, knowing that such benefits had been obtained by fraud.

All in violation of Title 42, United States Code, Section 1760(g).

## FORFEITURE ALLEGATIONS
## 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 7 U.S.C. § 2024(f), and
## 42 U.S.C. § 1786(p)(3)

32.     The allegations contained in Counts One through Seven of this

Indictment are hereby re-alleged and incorporated by reference for the purpose of

alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),

7 U.S.C. § 2024(f), and 42 U.S.C. § 1786(p)(3).

33.     As a result of violating Title 18, United States Code, Section 1343, as

set forth in this Indictment, defendant shall forfeit to the United States any

property, real or personal, constituting, or derived from, any proceeds obtained,

directly or indirectly, as a result of such violation, pursuant to Title 18, United

States Code, Sections 981(a)(1)(c) and Title 28, United States Code, Section

2461(c).

34.     As a result of violating Title 7, United States Code, 2024, as set forth

in this Indictment, defendant shall forfeit to the United States any property, real or

11

personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of, a violation of the statute, or proceeds traceable to a violation of the statute, pursuant to Title 7, United States Code, Section 2024(f) and/or Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c).

35.     As a result of violating Title 42, United States Code, Section 1760, as set forth in this Indictment, defendant shall forfeit to the United States any property, real or personal, used in a transaction or attempted transaction to commit, or to facilitate the commission of, a violation of the statute, and any property, real or personal, constituting, derived from, or traceable to any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to Title 42, United States Code, Section 1786(p)(3).

36.     Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of defendant:

       a.  Cannot be located upon the exercise of due diligence;

       b.  Has been transferred or sold to, or deposited with, a third party;

       c.  Has been placed beyond the jurisdiction of the Court;

       d.  Has been substantially diminished in value; or

       e.  Has been commingled with other property that cannot be divided without difficulty;

12

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

37.    Money Judgment:  Upon conviction of any of the violations alleged in this Indictment, the United States will seek a forfeiture money judgment against defendant in an amount equal to the total amount of proceeds obtained as a result of such violations and/or the total value of all property used to facilitate such violations.

THIS IS A TRUE BILL

*s/Grand Jury Foreperson*
GRAND JURY FOREPERSON


DAWN N. ISON
United States Attorney


*s/Anthony Vance*
ANTHONY VANCE
Chief, Branch Offices

*s/Anthony Vance*
ANN NEE
Assistant United States Attorney

Dated: March 2, 2022

Case: 4:22-cr-20113
Judge: Davis, Stephanie Dawkins
MJ: Ivy, Curtis
Filed: 03-02-2022
SEALED MATTER (tt)

| United States District Court<br>Eastern District of Michigan | Criminal Case Cov |
|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accu

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based on LCrR 57.10(b)(4)[1]: | |
| ☐Yes ☑No | **AUSA's Initials: AN** |

Case Title:     USA v.  Ranjit Kaur Ghotra

County where offense occurred:     Genesee

Offense Type:     Felony

Indictment -- **no** prior complaint

**F I L E D**
MAR 0 2 2022
U.S. DISTRICT COURT
FLINT, MICHIGAN

## Superseding Case Information

Superseding to Case No: _____     Judge: _____

Reason:

| **Defendant Name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

__March 2, 2022__
Date

**s/Ann Nee**

Ann Nee
Assistant United States Attorney
600 Church Street
Flint, MI 48502
ann.nee@usdoj.gov
(810) 766-5177

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence.  Cases may be companion cases even though one of them may have already been terminated.